## Willie Wusnig v. The State.

1. Under the provision of the Penal Code (Paschal's Digest, Article 1638,) that no person shall be convicted of any offense committed between the years of nine and thirteen, " unless it shall appear by proof that he had discretion sufficient to understand the nature and illegality of the act constituting the offense," it is not sufficient for the State to prove that the defendant, being twelve years of age, knew the difference between good and evil ; nor is it enough to prove that the child had the intelligence of ordinary boys of his age. To warrant a conviction the State should have proved that the defendant knew that the killing of a human being was a great crime, prohibited by law under severe penalties.

2. It is not necessary, however, that such proof should be made by direct and positive testimony. In most instances circumstances of education, habits of life, general character, moral and religious instruction, and oftentimes the circumstances connected with the offense charged, may be so proved as to satisfy the jury whether the accused had the discretion required by the statute.

3. In a trial of a boy twelve years of age, for murder, it was error to instruct the jury that the offense was manslaughter " if the shooting took place under such circumstances, showing that the defendant from his youth

was incapable of cool reflection; that his mind was agitated, so as to preclude the idea that he was aware of the enormity of his rash act, and of the serious consequences thereof;" which charge is violative of the statute in withdrawing from the jury any consideration of the question of infancy and responsibility, except so far as the crime might be reduced from murder to manslaughter—of which latter crime the defendant was convicted. The jury should have been required, under proper instructions, to determine whether, under the statute, the defendant was at all responsible for his act.

4. It was also error to charge the jury, in effect, that if the defendant, a boy twelve years old at the time of the homicide, possessed the mental capacity of boys of his age in general, he had sufficient discretion to understand the nature and illegality of the act of which he was charged—there being no evidence that the generality of boys of his age posssesed such discretion.

APPEAL from Comal. Tried below before the Hon. G. H. Noonan.

The appellant was indicted in November, 1869, and tried in May, 1870, for the murder of Henry Lohl, a youth about seventeen years of age. The verdict was manslaughter, with two years in the penitentiary.

It seems that the deceased with a younger brother and a sister were laboring in a field when the defendant, then about twelve years of age, who had been gunning, came to where they were, and for an hour or more amused himself at play; after which he got over the fence as though going away, but concealed himself in the bushes and commenced throwing stones at those in the field. The deceased called to him to stop throwing stones, but he continued to do so until the deceased advanced towards him for the purpose of making him stop, when the defendant also advanced and told the deceased to stop or he would shoot. The deceased continued to advance, and the defendant fired, lodging a load of duck or smaller shot in the face and chest of the deceased, from which he died in the evening or night of the ensuing day. The defendant remained for about a quarter of an hour along with the deceased

and his younger brother, and seemed neither sorry nor frightened, and made no remarks except " God d—n it."

The evidence is given with considerable detail and particularity in the transcript; but as the rulings of this court are founded on the charge of the court below to the jury, and not upon the evidence, it is not deemed necessary to give the facts in full.

On this case being remanded, as directed in the opinion, the defendant was put on trial in January, 1871, for manslaughter, and the law of the case as here expounded was given in charge to the jury, who again convicted the defendant of manslaughter, with two years in the penitentiary as his punishment. An appeal was again taken to this court, and the judgment was affirmed. A short opinion was delivered by Mr. Justice Walker, recognizing the second conviction as correct; but as the record presented no legal question calling for decision in the opinion, no report will be made of the second appeal.

*John P. White*, for the appellant.—The fair construction of the statute is that no person under our law up to the age of thirteen years is legally responsible for his acts. Under that age, *prima facie*, he lacks that which constitutes the very essence of crime, the " sound memory and discretion." If the party is over the age of nine but under thirteen years, then the State may show his liability to punishment " by proof that he had discretion sufficient to understand the nature and illegality of the act constituting the offense " at the time of its commission. In other words, the presumption under our statutes is that all minors of thirteen years are " *doli incapax*;" and the proof necessary to render them liable to punishment is, not that they come up to the ordinary standard of intelligence of persons of their age; nor that they have ordinary capacity and judgment; nor that they have sufficient discretion to understand right from wrong. This proof would perhaps have been sufficient at common law. Our

statute requires more. The party must not only possess all these requisites combined, to make him guilty, but he must in addition thereto have " sufficient discretion to understand the nature and illegality of the act constituting the offense." He may know that it is wrong to shoot another, because he may know that by shooting he will wound, and that to wound will create bodily suffering or even death. Still, such proof would fail to establish the fact that he knew that murder and manslaughter might result from shooting, and that they were two of the highest and most heinous crimes known to the laws, human or divine. Nor would it establish the fact that he knew that the offenses of murder and manslaughter were so grave and so heinous that the law had wisely provided that those guilty of committing such crimes should be punished with death or confinement in the penitentiary. To understand the nature of the act was for him to know that he was committing murder or manslaughter. To understand its illegality was to know that the severest condemnations of the law, to-wit : death or imprisonment in the penitentiary, were denounced against the commission of the crime. No such proof as this was made or attempted to be made in the case at bar.

But the proof made in the case does not come up to the standard of the common law rule.

Sir William Blackstone, treating upon the subject of infancy and nonage in relation to crime, says : "But by the law as it now stands, and has stood at least since the time of Edward the third, the capacity for doing ill or contracting guilt is not so much measured by days and years as by the strength of the delinquent's understanding and judgment. For one lad of eleven years old may have as much cunning as another of fourteen ; and in these cases our maxim is that '*malitia supplet ætatem*.' Under seven years of age, indeed, an infant cannot be guilty of felony, for then a felonious intention is almost an impossibility in nature ; but at eight years old he may be guity of felony. Also, under fourteen,

though an infant shall be *prima facie* adjudged *doli incapax*; yet if it appear that he was *doli capax*, and could discern between good and evil, he may be convicted and suffer death. Thus, a girl of thirteen years was burnt for killing her mistress; and one boy of ten and another of nine years old, who had killed their companions, have been sentenced to death, and he of ten years actually hanged, because the one hid himself and the other hid the body he had killed, which hiding manifested a consciousness of guilt and a discretion to discern between good and evil. And there was an instance in the last century where a boy of eight years old was tried at Abingdon for firing two barns; and it appearing that he had malice, revenge and cunning, he was found guilty, condemned and hanged accordingly. Thus, also, in very modern times a boy of ten years old was on his own confession convicted of murdering his bedfellow, there appearing in his whole behavior plain tokens of a mischievous discretion; and as the sparing of this boy merely on account of his tender years might be of dangerous consequences to the public, by propagating a notion that children might commit such atrocious crimes with impunity, it was unanimously agreed by all the judges that he was a proper subject of capital punishment. But in all such cases the evidence of the malice which is to supply age ought to be strong and clear beyond all doubt and contradiction." (Blackstone's Com., 4 Book, side pp. 23 and 24; Broome's Legal Maxims, side pp. 232 and 233; Arch. Crim. Prac., 8 ed., p. 11; see also Wharton's Amer, Crim. Law, 6 ed., § 58, 59 and 60.)

The evidence shows that the accused was born on the third day of August, 1856, and that the killing took place on the fifth day of August, 1868. The accused was then just twelve years and two days old when the offense was committed. Mr. Suchardt, who had been his school teacher, and who from that relation must have had as good if not better opportunities than any one else of knowing his mental capacity and discretion, says he does not know

and cannot say whether or not the accused could discern between right and wrong. The testimony of the other witnesses upon this point amounts absolutely to nothing. Some of them say that he had as much intelligence as ordinary boys of his age, and others that a boy who handles a gun must be presumed to know that it is wrong to kill. Presumptions of discretion will not do in such a case, even if the presumptions were warranted and well founded. The law requires proof—requires that it must be affirmatively shown that he had "sufficient discretion," etc.

In the cases cited and commented upon by Blackstone, the malice supplied the age, and it is undeniably true that malice may be proven by or inferred from circumstances. For instance, one of the boys hid himself and the other the dead body. These acts established a consciousness of guilt upon the part of the perpetrators. But is there any such evidence in the case under consideration? Far from it. On the contrary, the witness Hermann Lohl, the brother of the deceased, and who by-the-bye knows more of the affair than any one else, tells us that the accused remained by the wounded boy a quarter of an hour after the shooting; that he did nothing during the time; that he did not seem sorry or frightened, and that all that he said was " God d——n it." These facts preclude any consciousness of guilt, and they establish that it was impossible the accused could have known the enormity of the offense he had committed.

*John G. Boyle*, Assistant Attorney General, for the State.— The following points are submitted for the appellee :

I. The privilege of nonage, exempting infants between the years of seven and fourteen from the consequences of crime by the ancient common law, has been subjected to modern judicial examination, and materially modified.

The Penal Code of this State (Art. 1638, Pas. Dig.,) wisely limits the ages at which offenders are amenable, to nine and thir-

teen, and provides that it shall appear they have "discretion sufficient to understand the nature and illegality of the act constituting the offense."

This statute is to be fairly construed, according to the legislative intent, as expressed in the enactment. The courts refusing by any verbal nicety, forced construction, or equitable interpretation to exonerate parties within its scope. (Sedg. on Stat. and Const. Law, p. 326.)

Our law makers, in devising this provision, certainly did not intend to improve with such rigor upon the common law as to the requisite age of felons on the one hand, and on the other to shield them from the effects of their felonies, by requiring the State to prove they were conversant with the metaphysical and legal results of such criminality; but, on the contrary, to have that discriminating sense of right and wrong-doing, which is characteristic of youth of tender years. The Supreme Court of New Jersey, in a leading case, (5 Halst. Rep., 163,) held, where a boy of twelve was convicted of a capital offense on his own confession, that at the age of the defendant sufficient capacity is generally possessed in our state of society, by children of ordinary understanding, to be able, in a good degree, to distinguish right from wrong, and if it were satisfactory that the prisoner knew the nature of the crime with which he was charged, and that it was deserving of punishment, his infancy would furnish no obstacle on the score of incapacity to his conviction. The whole tenor of modern authorities sustains this proposition.

The author of the Commentaries, on this point, holds that "under fourteen an infant shall be *prima facie* adjudged to be *doli incapax*, yet if it appear to the court and jury that he was *doli capax*, and could discern between good and evil, he may be convicted and suffer death." (Black. Com., vol. 4, p. 25.)

But in this case the maxim *malitia supplet ætatem*, malice, (which is here used in its legal sense, and means the doing of a

XXXIII—42

wrongful act intentionally, without just cause or excuse,) supplies the want of mature years.    (Brown's Legal Maxims, § 311.)

II.    It is not necessary that the State should adduce full and plenary evidence, but only sufficient to repel the presumption that the defendant was *doli incapax*, and thereupon he was subject to punishment.    (The State v. Goin, 9 Hemphill, 175.)    And as his age the more nearly approximates to that limited by law, the inference in his favor on the score of infancy lessens, and the circumstances indicating that he was doing a wrong, while in the act, becomes stronger evidence of his capacity.    (City Hall Rec., vol. 5, p. 178.)    The exclamation " God damn it !" which escaped the defendant at the time of the killing, and on which counsel relies as proof of want of capacity, so far from being a token of innocent ignorance is rather proof of that " mischievous discretion " spoken of by Lord Chief Justice Hale, and shows that the object of this imprecation was not the unfortunate being who had just been bereft of life by his hand, but the act which he had committed, connected with the trouble he had brought on himself by his willful disregard of law, and his regret that he had done an act fraught with such fearful consequences.

III.    It appears from the school teacher's testimony, that the defendant was an idle, bad boy when under his supervision, but " knew it was wrong to steal, or shoot at a man."

" Whenever a person under the age of fourteen is charged with committing a felony, the proper course is to leave the case to the jury, whether at the time of perpetrating the offense such person has guilty knowledge that he was doing wrong."    (Russell on Crimes, vol. 1, p. 3.)

The doctrine is most pernicious in its tendency, and dangerous alike to law, and good government, that Texan youths, as in the case at bar, skilled in the use of deadly implements of physical warfare, are to have impunity for heinous crimes on the ground of infancy or irresponsibility.

OGDEN, J.—The appellant in this case was indicted for murder, and at the Spring term, 1870, of the district court was tried and convicted of manslaughter.   On the trial below the defendant filed a plea of infancy, setting up the fact that at the time of the alleged commission of the offense charged he was under the age of thirteen years, and therefore not personally responsible to the law for his acts.   It has long been the intent and policy of the law to protect the rights of infants in their person and property, during their mental and physical weakness; and it has been universally held that infants should not be held responsible to the law for any act, until they had attained that degree of intelligence and discretion which would enable them to judge correctly of their own rights and interests, and their various obligations to society. Their criminal responsibility attaches much earlier in life than their civil.   The age at which an infant shall be held responsible for a violation of the criminal law is fixed in England and America between seven and fourteen years.   Our statute provides that "no person shall, in any case, be convicted of any offense committed before he was of the age of nine years, nor of any offense committed between the years of nine and thirteen, unless it shall appear by proof that he had discretion sufficient to understand the nature and illegality of the act constituting the offense." (Paschal's Digest, Art. 1638.)

It is believed that under this act it is not sufficient to prove simply that the defendant, being but twelve years of age, knew the difference between good and evil, nor is it sufficient to prove that the child had the intelligence of ordinary boys of his age ; for the statute evidently requires something else, namely : that he should " understand the nature and illegality of the act ;" or, in other words, that he knew the killing of a fellow being was a great crime, prohibited by law under severe penalties ; and this must be proven by the State in order to warrant a conviction. Direct and positive testimony could seldom be found to prove such

---

---

a fact, nor is it deemed at all necessary; but circumstances of education, habits of life, general character, moral and religious instructions, and often circumstances immediately connected with the offense charged, may in most instances be proven, so as to convince an intelligent jury whether or not the defendant had the discretion required by the statute. The testimony on this point, as disclosed in the transcript, is extremely unsatisfactory and indefinite. We think, however, that this court should not disturb the verdict of a jury, on the ground that it was not supported by the evidence, unless the record showed that the jury had disregarded legitimate evidence on material matters at issue.

We are, however, of the opinion that the judgment in this case should be reversed, because of errors in the charge of the court to the jury.

The seventh charge of the court reads as follows: "If the shooting took place under such circumstances, showing that the defendant from his youth was incapable of cool reflection, that his mind was agitated, so as to preclude the idea that he was aware of the enormity of his rash act, and the serious consequences thereof, then his crime is manslaughter." This charge withdrew from the jury any consideration of the question of infancy and responsibility, excepting so far as it would tend to reduce murder to manslaughter, and therefore it is violative of the statute just quoted. It is true that the court, at the request of defendant's counsel, gave the statute in charge to the jury, but this being in conflict with the former charge, it is not possible to tell under what charge the verdict was found, unless we conclude that the peculiar language of the seventh charge given by the court precluded any further inquiry.

We are further of the opinion, that there was error in that portion of the charge which placed the responsibility of the defendant on the single fact, that his capacity was as good as that of boys generally of his age, without any proof whatever that the

defendant, or boys generally of his age, had sufficient discretion to understand the nature and illegality of the act of which he is charged.

For these reasons the judgment in this case is reversed and remanded for a new trial, in conformity with this opinion.

Reversed and remanded.