BURKE AKE, *alias* TOBE WILLIAMS, *v.* THE STATE.

1. EVIDENCE. — Oaths or affirmations shall be administered to witnesses in the mode most binding upon their consciences, and taken subject to the penalties of perjury; but no witness shall be disqualified because of religious belief, or the want of it.

2. WITNESS. — Children, or other persons who, having been examined by the court, appear not to possess sufficient intellect to relate transactions with respect to which they are interrogated, or who do not understand the obligation of an oath, are incompetent as witnesses.

3. SAME. — The court below, before whom the competency of a witness of tender years is tested, is best able to judge of his competency, and this court will not interfere unless it appears that the court below has abused its discretion.

4. RAPE — PENALTY. — The penalty for rape has been made by law to be death by hanging, or confinement in the penitentiary for any number of years not less than five, or for life, in the discretion of the jury

5. SAME. — The death penalty cannot be inflicted for an offence committed by the accused before he had attained the age of seventeen years, but he may be imprisoned in the penitentiary for life, or receive any other punishment prescribed by the Code for the offence of which he is convicted.

6. CHARGE OF THE COURT. — The jury were properly charged that, if they had a reasonable doubt that defendant was seventeen years old when he committed the offence, he was entitled to the benefit of the doubt.

7. BURDEN OF PROOF. — The principle that the burden of proof in criminal cases is always on the State has relation to the establishment of the *corpus delicti* and the defendant's complicity. But when the defence relies upon distinct, substantive matter of exemption or immunity, such as nonage, the burden of proving such matter is on the defendant. Note the elucidation of this subject in the opinion on the motion for rehearing.

APPEAL from the District Court of Travis. Tried below before the Hon. E. B. TURNER.

The indictment charged the appellant with rape upon the body of Louisa Lamascus. He was convicted upon trial, and his punishment assessed at death.

Louisa Lamascus being the first witness offered by the State, her testimony was objected to by the defendant, on the ground that she did not know the obligation of an oath. The court then asked witness if she knew the obligation of an oath; to which witness made no response. The court then asked witness if she had ever been instructed as to the meaning of an oath, and the necessity for telling the truth; to which the witness replied, "No!" The court then asked if witness had ever been told what would become of her if she did not tell the truth; to which she responded, "No!" The court then instructed the witness upon the necessity of telling only the truth, and the consequences of swearing falsely.

Being held qualified, she deposed that she had no father living. She had lived in Travis County since she was a little girl, removing there from Collin County. On the morning of the Sunday on which the offence was committed she started, horseback, from her sister's house, near the blind asylum, in Austin, to her mother's house, some five miles distant, in Fort Prairie. Getting off the road and losing her way, she obtained directions of two colored men, and proceeded in that direction until she met the defendant,

of whom she again asked directions, and was by him informed that she was going wrong. Defendant then took hold of her horse's bridle, and told her to get down; and witness responded that she did not want to. Defendant told her that he would shoot her if she attempted to run. He then led the horse to a tree, and commenced tying the bridle to a grape-vine. Witness offered defendant her horse if he would permit her to go on; which he refused. She then jumped off on the side from him, and ran, but was overtaken by defendant, who threatened to beat her with a large stick if she screamed. Witness called for help, but obtained none. Defendant threw her down, pulled up her clothes, and put his private parts in her private parts, laying on her for about one-half hour. All this occurred in Travis County, Texas.

Mrs. Lamascus, sworn for the State, testified that the last witness was her daughter, and would be fourteen years old in January, 1879. Her person was violated on Sunday, July 28, 1878. Her clothes, when she got home, were badly ripped up. There was very little blood on the clothes.

Cross-examined, says that her daughter complained of being sore and bruised for several days afterwards. Did not examine her private parts, and had no physician attending her.

Mrs. Munson, testifying for the State, said that, on the Sunday designated, Louisa came to her house crying, badly frightened, and with her clothes torn, and told her that a black man had met her, dragged her off her horse, and violated her person. The men-folks started out to look for the negro described by Louisa. The girl's face was scratched, her clothes torn and rumpled, and as wet as though dipped in water. State rested.

Monroe Ake, for the defence, stated that he remembered when Taylor Ake was born. Could not identify defendant as Taylor Ake, but if he was, he was born in the fall of

1861, witness thought, though not certain. Locates the time from the fact that Taylor Ake was one of twins, — the twin-sister dying one day after birth. Witness made the coffin and assisted in the burial.

Isaac Ake testified that defendant was Taylor Ake, so named at birth, but afterwards nicknamed " Burke " Ake, by which name he has since gone. Knows nothing about his age.

Jeff Moseley, in rebuttal, testified that he knew defendant three years ago, and that he was not so tall then as now.

Mr. Hume, in rebuttal, testified that some two years previously, when defendant worked in his yard, he was not so tall as now by about six inches.

Mr. Shuts knew defendant about three years before, and he was then near about as large as now.

Defendant moved for a new trial, and, his motion being overruled, he appeals.

*Dudley G. Wooten* and *N. S. Walton*, for the appellant.

*Thomas Ball*, Assistant Attorney-General, for the State.

WHITE, J. Appellant was tried and convicted at the December term, 1878, of the District Court of Travis County, for the crime of rape, alleged to have been committed by him upon the person of one Louisa Lamascus, on the twenty-eighth day of July, 1878. His punishment is, by the verdict and judgment rendered, assessed at death by hanging.

There are two questions, and but two, arising on the record, necessary to be discussed.

1. When the prosecuting witness, Louisa Lamascus, was sworn, upon suggestions of the defendant's counsel she was examined as to her competency as a witness, and her testimony objected to on the ground that she did not know

the sanctity and binding obligation of an oath. With regard to the religious belief of witnesses, before the adoption of the present Constitution, the rule, as stated in the statute, was that " no witness was incompetent to testify on account of his having any particular faith upon religious subjects, provided he believed in the existence of a Supreme Being." Pasc. Dig., art. 3114. In the fifth section of art. 1 of the Constitution, it is declared that " no person shall be disqualified to give evidence in any of the courts of this State on account of his religious opinions, or for the want of any religious belief; but all oaths or affirmations shall be administered in the mode most binding upon the conscience, and shall be taken subject to the pains and penalties of perjury."

Parties who are otherwise declared incompetent to testify in criminal actions are enumerated and classified in the statute. Amongst such we find, in the second subdivision or class, " children, or other persons who, after being examined by the court, appear not to possess sufficient intellect to relate transactions with respect to which they are interrogated, or who do not understand the obligation of an oath." Pasc. Dig., art. 3109. Rules governing the admissibility of the testimony of children of tender years were fully discussed, and the authorities examined, in *Brown* v. *The State*, 2 Texas Ct. App. 115, and the conclusion arrived at in that case is, as we believe, correctly summed up in the following extract, taken from the opinion. It is said: " We believe that the court before whom the examination of a child offered as a witness is made, is better able to determine as to its competency to testify than this court can possibly be from the bare transcript, and we would not feel warranted in reversing a conviction had on account of the admission of such testimony, unless it was made clearly to appear that the discretion of the court had been abused."

In the case at bar, if we are to judge of the intellect of

the witness by her relation of the circumstance about which she testified (and that is one of the statutory tests), as shown by the statement of facts, we must be permitted to say that the plain, straightforward, concise, and unequivocal manner in which she narrates the story of her wrongs evinces no ordinary degree of intelligence, and most thoroughly impresses one with the truth of the horrible outrage she unfolds. There is no analogy in the facts, so far as this witness's relation to the case is concerned, and the objectionable testimony disclosed in the case of *Mann* v. *The State*, 44 Texas, 642, and upon which that case was reversed.

2. It is contended that the verdict of the jury, in inflicting the death penalty, was contrary to the law and the evidence. The statute provides that " whoever shall be guilty of rape shall be punished by death, or by confinement in the penitentiary for life, or for any term of years not less than five, in the discretion of the jury." 2 Pasc. Dig., art. 6539. In this case, however, it is said that the evidence establishes that defendant had not yet reached the age of seventeen years, and that, therefore, he was exempt from such extremity of punishment. The law invoked reads as follows : "A person, for an offence committed before he arrived at the age of seventeen years, shall in no case be punished with death, but may, according to the nature and degree of the offence, be punished by imprisonment for life; or receive any of the other punishments affixed in this Code to the offence of which he is guilty." Pasc. Dig., art. 1639.

A witness was introduced by defendant with regard to his age, who says : " He (defendant) was born, as near as I can recollect, late in the fall of 1861. I cannot swear positively, but, to the best of my knowledge, he was born in 1861. I am not positive about the year in which defendant was born. I think it was in 1861, and late in the fall. He was one of twins, and his twin-sister died one day old. I

remember the year and time by the fact of her death, and that I made her coffin and helped to bury her.'' The only other witness of defendant says he knows defendant was a twin, and that his twin-sister died a short time after her birth; but he says, '' I don't know any thing about his age.'' In rebuttal, the State made *profert* of the defendant, and made proof with regard to his working and size for the past three or four years.

In the case of *Arch Perry* v. *The State*, 44 Texas, 478, the question of the age of the defendant seems not to have been made in the court below, and the Supreme Court, in reversing the case, directed attention to it as a question calling for fuller investigation in another trial. Here, however, the defendant made the point himself; and, to say the least of it, even if credible, the testimony he has adduced is not direct and positive of the fact. As a point in the case, the judge presiding submitted the question most fairly and strongly in his able charge to the jury. He says: '' But no person can be punished with death for an offence committed before he was seventeen years of age; so that, in case you should find the defendant guilty as charged, you must not, by your verdict, require the infliction of the death penalty if you have a reasonable doubt as to whether he was, at the time of the alleged offence, of the age of seventeen years.'' Again he tells the jury, '' the burden of proof is upon the State, and this burden never changes. And if, from the evidence before you, you have a reasonable doubt as to whether the defendant was of the age of seventeen years at the time of the alleged offence, you will give him the benefit of that doubt.'' The jury could not have entertained a doubt on the subject, else the verdict would have been different. They had the witnesses before them, heard the language they used, saw the mode and manner in which they gave their testimony, and it was their peculiar duty to pass upon their credibility and the weight which attached to their evidence. The learned judge who pre-

sided, and who had the same opportunities of ascertaining the facts that the jury had, must also have been satisfied, or it is fair to presume he would have performed his solemn and imperative duty by granting a new trial.

Looking to the result reached in the lower court in the light of the evidence furnished us in the record, we believe the defendant has been legally and fairly convicted of one of the most heinous crimes known to the law; that the verdict and judgment are not only not against the evidence, but that the State has fully sustained them by the evidence; that the forfeiture of his life is a meet and just punishment, under the facts of the case; and, so believing, the judgment of the lower court inflicting the punishment of death is in all things affirmed.

*Affirmed.*

[After the rendition of the above opinion, counsel for the appellant moved for a rehearing, on grounds ably presented in an oral argument, as well as in their brief, of which a large part is inserted. — *Reporters.*]

*D. G. Wooten* and *Newton S. Walton*, for the appellant, on their motion for a rehearing. The provision of our statute in regard to exemption from capital punishment on account of age is in these words: "A person, for an offence committed before he arrived at the age of seventeen years, shall *in no case* be punished with death; but may, according to the nature and degree of the offence, be punished by imprisonment for life, or receive any of the other punishments affixed in this Code to the offence of which he is guilty." Pasc. Dig., art. 1639. It is thus the statutory right of every man not to be hung for an offence committed before he was seventeen years old, and it would seem that when this right is invoked by a defendant on trial for his life, the State must prove beyond a reasonable doubt that the right does not exist. It has been frequently decided that statutory

rights of this special nature must appear to have been granted, affirmatively from the record. It is a statutory right of every prisoner to be arraigned and to plead, and it must appear affirmatively and positively, from the record in the case, that these rights were enjoyed by the defendant; otherwise, the judgment and verdict will be reversed. *Early* v. *The State*, 1 Texas Ct. App. 248 ; *Pringle* v. *The State*, 2 Texas Ct. App. 300 ; *Avara* v. *The State*, 2 Texas Ct. App. 419. Venue is likewise a statutory right, and must appear to have been positively proven and affirmatively shown, from the record. *Higbee* v. *The State*, 2 Texas Ct. App. 407 ; *Yarborough* v. *The State*, 5 Texas Ct. App. 125. The same is true of the right to plead "not guilty." *Perry* v. *The State*, 4 Texas Ct. App. 566 ; *Morris* v. *The State*, 4 Texas Ct. App. 589 ; *Stacey* v. *The State*, 3 Texas Ct. App. 121 ; *Satterwhite* v. *The State*, 3 Texas Ct. App. 428. Also, the right of the prisoner to be present when his motion for new trial is heard and decided. *Gibson* v. *The State*, 3 Texas Ct. App. 438 ; *Sweat* v. *The State*, 4 Texas Ct. App. 617.

Does not the statutory exemption from capital punishment for an offence committed before the defendant was seventeen stand upon the same footing? And can the court say, in the light of the evidence in this case, that it appears positively and affirmatively from the record that the defendant enjoyed his legal right in this respect? We can discern no distinction between the questions decided in the cases cited and the one presented in this case. " The verdict of the jury must be above suspicion, and the record must show affirmatively that the defendant was deprived of no legal right." *Early* v. *The State*, 1 Texas Ct. App. 277 ; *Grissom* v. *The State*, 4 Texas Ct. App. 389.

The statement of facts in the record of this case certainly is very far from disclosing that the defendant was proven positively and affirmatively to be over seventeen years old at the time of the commission of the alleged crime, and

unless it does so, in the light of the above decisions, we fail
to understand how the verdict is to be left undisturbed.

The question fairly and prominently presented in this
case was this : Under the provision of our statute on the
subject of exemption from capital punishment by reason of
the defendant's not having attained the age of seventeen
years at the time of the commission of the offence charged,
and the protection of this statute having been invoked by
the defendant on his trial in the court below, does the bur-
den of proof rest upon the State or upon the defendant?
To the consideration of this very vital question, this court,
in its opinion delivered in the case, did not address itself;
and it is safe to say that, for any thing in that opinion, the
question remains as uncertain as before. The point is
surely one of sufficient importance to merit a distinct and
definite adjudication, and if for no other reason, we would
urge a rehearing in order to have it decided. If the bur-
den be upon the State under such a plea, then we respect-
fully, but earnestly, insist that the verdict is not only not
supported by the evidence, either in quantity or quality,
but is clearly against it, and such a verdict this court has
held it to be its duty and province to set aside. *King* v.
*The State*, 4 Texas Ct. App. 256.

The question here presented has never been decided in
this State, nor, so far as we have been able to discover, in
any of the States of the Union. The provision of our
statute under which it arises is, we believe, somewhat pecu-
liar to Texas. It will be observed that it involves some
thing different from the well-known doctrine of *doli capax*
and *incapax*. Under the latter, the presumption of *inca-
pacity* for crime, and therefore non-liability to punishment
of any description, is in favor of the defendant if he was
below fourteen years old, and the presumption becomes
conclusive below seven years of age ; the presumption of
*capacity* for crime, and therefore liability to punishment, is
in favor of the State when the defendant is above the age of

fourteen.   This was at common law.   Whart. Cr. Law, 98, 99 ; 1 Hale's P. C., marg. p. 26 ; Bishop's Stat. Cr., sect. 353.   Our statute has changed the ages to nine and thirteen years, the presumption for and against capacity being con- clusive outside those limits.   Pasc. Dig., art. 1638.

The plea of *seventeen years*, as raised in this case, is a dis- tinct and different question, and provided for in a separate article of the Code.   Pasc. Dig., art. 1639.

The plea of *nonage*, under this latter provision, in no way affects the capacity of the defendant to commit a crime, as is the case under the preceding article ; nor does it relieve him from punishment, it being expressly provided that he shall be liable to any and all of the other penalties of the Code except that of death.   Pasc. Dig., art. 1639.   It goes merely to diminish the degree and severity of the punish- ment, and in this sense seems a material question in deter- mining the legal quality of the guilt of the accused.   The question of the age, then, under this provision, is a matter of proof for the State, in case it is specially suggested as a defence by the accused, and therefore comes under the general and well-established rule that the burden of proof rests upon the State, and that this burden never shifts. It is true, it is a *special defence*, being a right established by special statutory provision, but it is proper and competent to be given in evidence and embraced under the general issue of "not guilty."   1 Bishop's Cr. Proc., sect. 743 ; 1 Stark. on Cr. Pl. (2d ed.) 338, 339 ; 1 Chitty's Cr. Law, 473.   "Upon all capital accusations, the plea of 'not guilty' puts in issue the whole of the charge, not merely whether the defendant actually did the acts stated on the record, and with the criminal intention with which it is alleged he was actuated, but also the legal quality of the guilt to be deduced from the whole."   1 Chitty's Cr. Law, 471.   See also, as to burden of proof, and that the general plea of "not guilty" puts in issue special defences like this, 3 Greenl. on Ev., sects. 12, 29.   The plea of non-

age, under art. 1639 of our Criminal Code, affecting, as it does, the measure and severity of the penalty, puts the State upon proof of the thing requisite to inflict the extreme penalty called for in the indictment, viz., that defendant was seventeen years old at the commission of the offence. And this fact, like all other material questions going to affect the " legal quality " of the defendant's guilt, must be affirmatively established by the prosecution, to the exclusion of all reasonable doubts. That this has been done, cannot be shown from the record.

What is a reasonable doubt has been repeatedly decided by this court. *Brown* v. *The State*, 1 Texas Ct. App. 154; *Massey* v. *The State*, 1 Texas Ct. App. 564; *Chapman* v. *The State*, 3 Texas Ct. App. 67; *Ham* v. *The State*, 4 Texas Ct. App. 676. Under these decisions, and in view of the rule laid down as to reversals in *King* v. *The State*, 4 Texas Ct. App. 256, and *Jones* v. *The State*, 4 Texas Ct. App. 419, we fail to see how this case can be affirmed.

It cannot be held, in opposition to the position above taken, that the plea of nonage, under our statute, is similar to the plea of *insanity*, and, like the latter, imposes upon the party pleading it the necessity of proving it. The two defences are entirely unlike. Insanity goes to defeat the whole prosecution, and attacks the criminal capacity and liability to punishment of the defendant; whereas that of nonage, in this case, affects not the capacity or responsibility of the accused in the least, but simply diminishes the severity of the penalty imposed. The presumption of *sanity*, which is said to be stronger than that of *innocence*, is based on reason, analogy, and general experience; whereas there can be no presumption at all in reference to age, and therefore no abatement of the rigid rule that the State must prove affirmatively all material issues, including that of age, which, in this instance, materially affects the measure of punishment, which is, in its turn, the measure of guilt.

That the burden of proof, being upon the State, never shifts, notwithstanding the allegation of fact upon the part of the State assumes a *negative* character, see *Shanks* v· *The State*, 25 Texas (Supp.), 340.

If, as we have argued above, the burden of proof was on the prosecution in this case, then, plainly, the verdict of the jury is not in accordance with the law and the evidence, for, —

1. If there had been *no evidence* at all introduced, the plea of *nonage* having been raised and the burden being upon the State, a verdict assessing the punishment of death would have been against the law and evidence, and a nullity.

2. The plea *was* raised; the burden was on the State; *some* evidence was introduced, but none of it on the part of the State was positive and affirmative, while that for the defence was practically positive and reasonably certain. Therefore, the verdict was not such as the law required or the evidence warranted, and must be set aside.

For these reasons, and that the case may be heard and decided upon the real questions presented by the record, which we claim has not been done, we ask the court to grant appellant's motion to set aside the judgment heretofore rendered, and to hear the case anew.

The guilt or innocence of the appellant, the enormity of his crime, or the wickedness of its perpetration, are matters of no weight or concern in this case. The question is entirely upon a statutory right of the accused, conclusively and imperatively prescribed in the Penal Code, that *he shall not be hung* unless he is seventeen years old at the time he committed the offence. It appears clear to us that, if the State desires to hang a man, it must prove affirmatively and positively those things necessary to the legal infliction of the death penalty, among which is the fact that the defendant was above the age of seventeen at the time he did the acts charged in the indictment.

*Thomas Ball*, Assistant Attorney-General, for the State. In this cause, in the trial below, appellant, as a means to save himself from the gravest penalty known to the law, offered evidence to show that at the time of the commission of the offence he was not seventeen years old. This action of the defendant below was tantamount to a plea of confession and avoidance, and the burden of proof was upon him to show his exemption from the death penalty.

The whole matter, under a full and fair charge of the court, was submitted to the jury; a verdict of guilty was returned, and the punishment fixed at death. From the judgment thereon defendant appealed. The judgment was affirmed, and defendant now makes a motion for a rehearing.

It is urged, in support of the motion, that the burden of proof was not on the defendant to show that he was less than seventeen, but that the State must affirmatively show such to be his age, before the death penalty can be affixed. On this proposition the State joins issue.

Wharton on Criminal Law, sect. 709, vol. 1, says: "The rule of law is, when the fact of killing is proved to have been committed by the accused, and nothing further is shown, the presumption of law is that it is malicious, and an act of murder. It follows, therefore, that in such cases the proof of matter of excuse or extenuation lies in the accused, and this may appear either from evidence adduced by the prosecution or evidence offered by the defendant." In the same section Wharton says: "In Ohio, in a prosecution for abortion, in which, under the statute, it is a defence that the act was pronounced necessary by two physicians, it has been held that this defence, if set up by the defendant, must be affirmatively proved."

Such, then, is the shape into which the law on this vexed and difficult question is generally settling; and there is much reason for us to rest contented with the result thus reached.

When the prosecution presents a case embracing the single

feature of the defendant's guilt, unattended by any miti-
gating circumstances, the defendant, in setting up such
mitigating or extenuating circumstances, must establish
them by preponderating proof.   The attitude in which he
stands is that of a "person setting up a plea of abate-
ment."

Same, sect. 614, says :  " In other words, whether in such
case the burden of proof shifts has been much discussed.
The better opinion seems to be that, in such cases, the bur-
den is on the defendant."

In *Caldwell* v. *The State*, 5 Texas, 207, the court told the
jury " that if the defendant presented his gun at the prose-
cutor, within shooting-distance, the presumption of law was
that the gun was loaded ; and that if it was not, it devolved
upon the accused to prove it."   This case was affirmed, and
herein it was settled that the burden of proof changed.

In *The Commonwealth* v. *McKie*, 1 Gray, 65, the court
say :  " There may be cases where a defendant relies on some
distinct, substantive ground of defence to a criminal charge,
not necessarily connected with the transaction on which the
indictment is founded (such as insanity, for instance), in
which the burden of proof is shifted upon the defendant."
In *The Commonwealth* v. *Rogers*, 7 Metc. 504, the same doc-
trine is held ; in *The Commonwealth* v. *Heart*, 11 Gray, 303,
same is held ; in *The Commonwealth* v. *Eddy*, 7 Gray, 584,
same is held ; *Stewart* v. *Ashley*, 34 Mich. 189 ; *The State* v.
*Briscoe*, 30 La. An. 433 ; *The State* v. *Arnold*, 13 Ired. 184 ;
*Brown* v. *The State*, 4 Texas Ct. App. 288, 289.

The court say :  " He who alleges a specific fact may
generally be presumed to know more about it, and to have
better means of proof, than he who denies it ; and, usually,
it is far easier for the first to prove what he affirms than
for the other to prove his denial.   *   *   *   The burden of
proof lies upon the party who seeks to support his case by
a particular fact of which he is supposed to be cognizant."

As in this case defendant was alone cognizant of his age,

and if he desired to avoid the grave penalty of death, it was his province to show the fact, to thwart the penalty fixed by law.

In *The State* v. *Whittier*, 21 Me. 348, where a party was indicted for maliciously injuring a dwelling-house, without the consent of the owner, etc., the trial judge told the jury "that it was not incumbent on the government to prove that there was no consent of the owner, and that the burden of proof was on the accused to show that he had such consent." To this defendant excepted, and the Supreme Court, in passing on the question, overruled the exceptions.

Again : in *Rufer and Egner* v. *The State*, 25 Ohio, 470, where the confessions of the prisoners were introduced against them, without first having shown that they were not induced by improper representations, the court say : "There is no presumption of law, however, that such confessions are induced by improper representations made to the prisoner ; but, on the contrary, like every other act of the human hand or head, they are presumed to be voluntary, until the contrary is shown. Hence, the burden of showing that such confessions were involuntary *rests upon the accused.*" See Burrill on Cir. Ev. 728 ; 1 Greenl. on Ev., sects. 78, 79, 81b.

In *The State* v. *Patterson*, 45 Vt. 316, *Heinemann et al.* v. *Heard et al.*, 62 N. Y. 455, and *Swallow* v. *The State*, 22 Ala. 21, 22, the courts lay down the same doctrine, with the exception that, where a *primâ facie* case is made out by one, it must be rebutted in order to entitle the other party to a verdict. In support of the same principle, see Leading Cr. Cas. 352–357, note.

After carefully examining this question, it is concluded, from the weight of authority, that the prosecution has two things only to make out in order to convict, — viz., the overt act and the guilt of accused. When this is done by the prosecution, then, if accused has any distinct and substantive fact, unconnected with the crime, by which he can

justify, excuse, or mitigate the offence, the burden of proof at once shifts to him, — as in the case of an *alibi*, for instance ; to support this, the *onus probandi* is on the defendant. Pasc. Dig., art. 1655.

And, as in the case at bar, if defendant had any distinct and independent fact in his knowledge why the rigor of the law should not be invoked against him as adequate punishment for the terrible crime, it was his province to affirmatively show the fact, and not the business of the State to prove a negative, when the existence of that (if such existed) was peculiarly within his own knowledge, and not known to the State. *Quære*, if such would be the case in England, where parish registers are kept, which are public records, and in which, by act of Parliament, all births are compelled to be recorded, under a severe penalty for failure to do so?

If the position assumed by appellant is correct, then it follows that every indictment for a capital offence must also aver that the accused is over seventeen years old ; because, if it is the duty of the State to prove this negative, then it must be incorporated in the indictment. Pasc. Dig., art. 2864.

But, in order to meet this motion in every way, suppose it is admitted that the affirmative of the age is on the State, then it is submitted that the whole evidence, *pro* and *con*, was before the jury, under a careful charge as to his age ; and, by their verdict, they said that the evidence of age was with the State, and this court should not interfere unless it affirmatively appears that the verdict is, in fact, contrary to the evidence.

WHITE, J. With an earnestness and zeal for a poor and unfortunate client which cannot be too highly commended, the counsel who, under appointment of the court, and without fee or the hope of reward, so ably represented this appellant on the trial in the lower court and upon his

hearing upon appeal here at a former day of this term believing that a question of law, important to the rights and the very life of defendant, had not been settled by our opinion of the thirtieth day of April last, affirming the judg ment assessing the death penalty against him, have filed a motion for a rehearing in the case ; and in a printed brief, which exhibits great research and ingenuity of argument, attempt to support the motion in their elaboration of the question involved.

In response, the assistant attorney-general, impressed also with the importance of the question, has spared no pains in the skilful argument which he submits in opposition to the motion.

As insisted upon by appellant's counsel, the position is that, our statute having by express terms provided that " a person, for an offence committed before he arrived at the age of seventeen years, shall in no case be punished with death " (Pasc. Dig., art. 1638), and defendant having directly tendered that issue on the trial, and invoked the protection of the statute, the burden of proof was upon the State to show that he was not within the exemption, and that the showing must be maintained on her part by positive, affirmative, and indubitable evidence.

As here presented, neither this question, nor any one exactly analogous, has ever been decided in this State. True, we frequently meet such expressions as : " The rule of law is, that the burden of proof never shifts, and is on the government throughout, even where the allegation of a fact is negative in its character." *Shanks* v. *The State*, 25 Texas (Supp.), 326. " The burden of proof to show the truth of the charge is at all times on the State." *Black* v. *The State*, 1 Texas Ct. App. 369. " In cases of theft, the burden of proof is on the State at all times." *Chapman* v. *The State*, 1 Texas Ct. App. 728. " The burden of proof rests always on the State, and does not shift." *Templeton* v. *The State*, 5 Texas Ct. App. 398. These are but enunciations of an elementary rule.

As stated by Mr. Burrill in his work on Circumstantial Evidence, Rule 1 is, that "the *onus* of proving every thing essential to the establishment of the charge against the accused lies on the prosecution." He says: "This rule has otherwise been stated thus: 'The burden of proof is always on the party who asserts the existence of any fact which infers legal accountability.' It is a universal rule of evidence, founded on the most obvious principles of justice and policy, and derived from the great fundamental maxim of law, that every person must be presumed innocent until proved to be guilty." Burrill on Cir. Ev. 728.

In Redfield's edition of Greenleaf on Evidence, sect. 81b, vol. 1, he says: "It would seem to be the true rule in criminal cases, though there are some decisions to the contrary, that the burden of proof never shifts, but that it is upon the government throughout; and that in all cases, before a conviction can be had, the jury must be satisfied upon all the evidence, beyond a reasonable doubt, of the affirmative of the issue presented by the government, to wit, that the defendant is guilty in manner and form as charged in the indictment;" and he cites the opinion by Bigelow, J., in the case of *The Commonwealth* v. *McKie*, 1 Gray, 61–65, as containing an acceptable and very able exposition of the general rule of law as to the burden of proof in criminal cases.

Turning to that decision, we make the following liberal extract from the opinion of the learned judge: "The general rule as to the burden of proof in criminal cases is sufficiently familiar. It requires the government to prove, beyond a reasonable doubt, the offence charged in the indictment; and if the proof fails to establish any of the essential elements necessary to constitute a crime, the defendant is entitled to an acquittal. This results, not only from the well-established principle that the presumption of innocence is to stand until it is overcome by proof, but also from the form of the issue in all criminal cases

_____

tried on the merits, which, being always a general denial
of the crime charged, necessarily imposes on the govern-
ment the burden of showing affirmatively the existence
of every material ingredient which the law requires in
order to constitute an offence.   If the act charged is justi
fiable or excusable, no criminal act has been committed,
and the allegations in the indictment are not proved.   And
this makes a broad distinction in the application of the rule
of the burden of proof to civil and criminal cases.   In the
former, matters of justification or excuse must be specially
pleaded in order to be shown in evidence, and the defend-
ant is, therefore, by the form of his plea, obliged to aver
an affirmative, and thereby to assume the burden of estab-
lishing it by proof; while in the latter all such matters are
open under the general issue, and the affirmative, — namely,
proof of the crime charged, — remains in all stages of the
case upon the government.''   But he further says : '' There
may be cases where a defendant relies on some distinct,
substantive ground of defence to a criminal charge, not
necessarily connected with the transaction on which the
indictment is founded (such as insanity, for instance), in
which the burden of proof is shifted on the defendant.''
1 Gray, 61.   As to the law with regard to insanity, in this
State, see *Webb* v. *The State*, 5 Texas Ct. App. 596.

Mr. Redfield says : ''Although the above decision is care-
fully limited to that precise case, yet it would seem that its
principle would cover all cases, including those in which
the defendant relies upon some distinct, substantive ground
of defence, not necessarily connected with the transaction
on which the indictment was founded, — as insanity, for
instance.   For, in every case, the issue which the govern-
ment presents is the guilt of the defendant; and to prove
this the jury must be satisfied, not that the defendant
committed the act constituting the *corpus delicti*, but that,
also, at the time of the commission thereof, he had intelli-
gence and capacity enough to have a criminal intent and

purpose; because, if his reason and mental powers are either so deficient that he has no will, no conscience, or controlling power, or if, by the overwhelming violence of mental disease, his intellectual power is for the time oblit-erated, he is not a responsible moral agent, and is not punishable for criminal acts.'' 1 Greenl. on Ev. (Redf.), sect. 81c; *Webb* v. *The State*, 5 Texas Ct. App. 596.

As thus enunciated, we believe the doctrine to be correctly asserted, and we know of no decision of any of the courts in this State which has ever controverted or contravened it. On the contrary, the extent to which our courts have gone is stated in *Hall* v. *The State* (Galveston term, 1875), not reported, but quoted in *Perry* v. *The State*, 44 Texas, 473, and *Brown* v. *The State*, 4 Texas Ct. App. 275, in which latter case it is said: '' In the case of *Hall* v. *The State* (Galveston term, 1875), this subject was fully considered, and after a careful examination of the statutory provisions bearing upon it, and a review of the leading authorities, the conclusion is arrived at that the burden of proof is not on the defendant in a criminal case in the sense in which it is understood to rest on the defendant in a civil suit. In a criminal prosecution, where the accused relies on the plea of not guilty, admitting nothing, the *onus* is on the State to overcome the legal presumption of his innocence ; and the question of his guilt is to be decided from the whole evidence, without pausing to inquire whether it was introduced by him or the State.''

In fact, we know of no case where it has ever been held that the rule that '' the burden of proof never shifts from the State '' has been held to extend further than proof of the case as charged in the indictment ; nor of any case where, if the defendant seeks to excuse himself from liability on account of some substantive, distinct matter, he has not been held to have the laboring oar, and the *onus* of making good his issue thus presented.

Take, for instance, nonage, as provided by statute (Pasc.

Dig., art. 1638), which reads: "No person shall, in any case, be convicted of any offence committed before he was of the age of nine years; nor of any offence committed between the years of nine and thirteen, unless it shall appear by proof that he had discretion to understand the nature and illegality of the act constituting the offence." Here we have an instance in which the burden of proof must actually shift twice, before a conviction can be had, — first, upon the defendant, to establish that he is between the years of nine and thirteen (*McDaniel* v. *The State*, 5 Texas Ct. App. 475); and, second, back upon the State, to show that, though between the years of nine and thirteen, he had discretion sufficient to understand the nature and illegality of the act constituting the offence. *Wusnig* v. *The State*, 33 Texas, 651. The fact that he is of nonage is a distinct, substantive matter, which the defendant must show before the State is required to prove the intelligence necessary to make him liable for his acts.

Again: take the law of assaults. There it is provided that the "pointing of an unloaded gun, or the use of like means, with which no injury can be inflicted, cannot constitute an assault." Pasc. Dig., art. 2144. Yet in such a case it has been held, time and again, that the burden of proof is upon the defendant to show that the gun was not loaded. *Caldwell* v. *The State*, 5 Texas, 18; *Crow* v. *The State*, 41 Texas, 468; *Forrest* v. *The State*, 3 Texas Ct. App. 232; *Burton* v. *The State*, 3 Texas Ct. App. 408. Again: "When it is shown that a wound which might be fatal has been inflicted by the accused with a murderous intent, then the burden of proof is on him to show that the death of the deceased resulted from malpractice or culpable neglect of the attending surgeon, or from some cause other than that of the wound." *The State* v. *Briscoe*, 30 La. An. 433.

It is unnecessary to illustrate the question further. The instances cited show that the maxim that the burden of

proof in criminal cases never shifts from the State, means only that it never shifts in so far as it is necessary to make out the specific case of murder or rape, or any other offence charged in the indictment, by establishing the *corpus delicti* and the constituent elements of the crime. When distinct, substantive matter is relied upon by the defendant to exempt him from punishment and absolve him from liability, then that is matter foreign to the issue as made by the State in her charge against him, and the burden of proving it, in reason, common sense, and law, should be upon the defendant.

We are not without authority directly in point, so far as the facts in the case we are considering are concerned. The case of *The State* v. *Arnold*, 13 Ired. 184, presents the identical question here made. It was there held that, "when the defence, on an indictment for murder, is that the prisoner was under the age of presumed capacity, the *onus* of proof lies upon the prisoner. If the age can be ascertained by inspection, the court and jury must decide."

We see no occasion to disturb the judgment heretofore rendered in this case, and the motion for a rehearing is, therefore, refused.

*Rehearing refused.*