[Opinion delivered March 3, 1886.]

[No. 2029.]

AUSTIN PARKER *v.* THE STATE.

1. PRACTICE — NON-AGE AS A DEFENSE FOR CRIME — BURDEN OF PROOF.— Article 34 of the Penal Code provides that "no person shall in any case be convicted of any offense committed before he was of the age of nine years, nor of any offense committed between the years of nine and thirteen unless it shall appear by proof that he had discretion to understand the nature and illegality of the act constituting the offense." *Held* that it is necessary for the State, in order to support the conviction of a minor between the ages of nine and thirteen, after the minor has established his non-age, to prove that the minor had discretion sufficient, not only to understand the moral wrong of the act, but to understand and know that it was illegal, and prohibited by law. This requirement of the statute is not satisfied by proof that the minor knew good from evil, or right from wrong, or that he was possessed of the intelligence of ordinary boys of his age.

2. SAME — CIRCUMSTANTIAL EVIDENCE.— CHARGE OF THE COURT must instruct the jury upon the law of circumstantial evidence, when such evidence alone is relied upon by the prosecution; and failing in this respect the charge is erroneous.

APPEAL from the District Court of Bell. Tried below before the Hon. W. A. Blackburn.

The conviction in this case was for the nocturnal burglary of the store-house of Blair & Wear, in Bell county, Texas, on December 10, 1885. A term of two years in the penitentiary was the penalty assessed against the appellant.

Hugh Wear was the first witness for the State. He testified that he was the junior member of the firm of Blair & Wear,

family grocers, Belton, Bell county, Texas. The defendant was frequently employed to do chores about the store of Blair & Wear, and when so engaged passed, at will, in and out of the store. Late on the evening of December 10, 1885, witness ordered the defendant to close the back door of the store in the usual manner, by adjusting an iron pin. Defendant closed the door, reported that he had secured it, and left. Witness found, before he left, that the door was not secured, and that the pin was but loosely inserted. Witness fastened the door with the pin and closed the store for the night. He found the back door of his store open on the next morning. The iron pin had been bent and forced out of the hole into which it fastened. Witness, upon examination of his goods, missed some candy and a small pistol which was usually kept in the show-case. When the defendant came to the store on that morning, witness charged him with the burglary. He at first denied that he had anything to do with the burglary. Witness told him that he, witness, knew all about it; that he had the defendant; that the defendant was seen in the store, and he might as well own up and tell all about it. Defendant then left the store and in a short time returned with the pistol and delivered it to the witness. The witness told the defendant that he had been seen in the store, but, as a fact, witness knew nothing of his having been seen in the store. No one had the consent of the witness to enter his store on that night or to take the pistol or candy.

John Blair testified, for the State, that he was the senior member of the firm of Blair & Wear, and usually slept in the store at night. He was not in Belton on the night of the burglary, and gave no one consent to enter the store.

Lon Hudson testified, for the State, that about 4 o'clock on the morning of December 11, 1885, he passed the store of Blair & Wear and noticed that a light was burning inside, and that the back door was open. He did not look into the store to see who was in there. The State closed.

Miles Parker, a freedman of color, and the father of the defendant, testified, for the defense, that the defendant was born on the 27th day of October, 1873, and was therefore past twelve, but under thirteen, years of age. He was born on Reed's place, about two and a half miles west of Belton. Witness was present at defendant's birth, and knew that the defendant would not be thirteen years old until his next birthday. Witness had endeavored to teach the defendant the right. He had sent him to school but stopped him because he learned nothing. Witness did not think him any more

intelligent than ordinary boys of his age. Defendant came home before dark on the night of December 10, 1885, and, with the exception of about thirty minutes during which he was gone to escort his grandmother home, he was at home until breakfast next morning. Witness had a conversation with Mr. Wear about the burglary on the morning after it occurred, but could not recollect exactly what he said to Mr. Wear. He, however, did not tell Mr. Wear that defendant was fourteen, nor that he was thirteen years old. He told Mr. Wear that the defendant was in his thirteenth year, which was the truth. Witness had no register of the defendant's birth, and located the time of his birth purely from memory. He entered the birth of the defendant (by memory) in a testament when the defendant was six years old. That testament was lost years ago. The witness did not sleep with the defendant on the night of the burglary. He merely supposed that the defendant was at home throughout the night, because he usually stayed at home all night. Witness was a preacher.

The State recalled Hugh Wear in rebuttal. Mr. Wear testified that Miles Parker was in his store on the morning after the burglary, and told witness, in answer to the direct question as to defendant's age, either that he was thirteen or fourteen years old. It was the witness's recollection that he said fourteen.

The State then made profert of the defendant, and introduced Messrs. Wear, Blair, Hudson and Karnes, who testified that they knew the defendant but did not know his age. They knew him to be a boy of average intelligence, and that he had sense enough to know right from wrong, and to know that it was wrong to break into a house at night and steal.

The motion for new trial raised the question discussed in the opinion.

No brief for the appellant.

*J. H. Burts*, Assistant Attorney-General, for the State.

WHITE, PRESIDING JUDGE. It was in proof by the direct and positive testimony of the father of appellant that the boy was born upon the 27th of October, 1873. The date of the commission by him of the burglary charged is fixed in the indictment on the 10th day of December, 1885. This would make the age of defendant at the latter date twelve years, one month and thirteen days.

Our statute provides that "no person shall in any case be con-

victed of any offense committed before he was of the age of nine years; nor of any offense committed between the years of nine and thirteen unless it shall appear by proof that he had discretion to understand the nature and illegality of the act constituting the offense." (Penal Code, art. 34.) This statute is provided as a protection for all children of ordinary intelligence who are within the prescribed limits of *non-age*, that is, under thirteen years,— all such being presumed to be "*doli incapax.*" To hold such amenable for violations of the law, in addition to their ordinary intelligence it is therefore required that it shall appear by proof that the child "had discretion sufficient to understand the nature and illegality of the act constituting the offense."

The State must prove this discretion after defendant has established his non-age; and proof that defendant knew good from evil, or right from wrong, or that he was possessed of the intelligence of ordinary boys of his age, does not fill the requirement of the statute. It must be shown that he understood the nature and illegality of the particular act constituting the crime. (*Wusnig* v. *The State*, 33 Texas, 651; *Gardner* v. *The State*, 33 Texas, 692; *McDaniel* v. *The State*, 5 Texas Ct. App., 475.)

We confess that to our minds upon this point the evidence in the case we are considering is very unsatisfactory. His father testified that he had always tried to teach the boy what was right,— had sent him to school a good deal,— but, finding he was not learning anything, stopped him. For the prosecution four witnesses "testified that they knew the defendant, but did not know his exact age. He was a boy of average intelligence of boys of his size and age, and had sense enough to know right from wrong, and to know that it was wrong to break into a house at night and steal." The statute seems to contemplate that he should not only know that the act was wrong, but that it was also illegal,— that is, that it was an act which the law denounced and punished.

The evidence as disclosed in the statement of facts is entirely circumstantial. It is true the prosecuting witness Wear says he told defendant that he, witness, "knew all about it, and he might as well own up, as he had been seen in the store, and tell all about it, as I had him. He then went off and in a short while returned with the pistol and delivered it to me." But he does not say that defendant confessed to him that he committed the burglary. His bringing the pistol was a very strong circumstance of guilt, but, without being accompanied by a direct confession, it was only a circumstance. Such being the character of the testimony,

it was the duty of the court to have charged the law relative to that, character of testimony; which was not done.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*